

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

**DAVID W. HERCHER**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1538

COLLIN M. COLE
LAW CLERK
DORIA D. ARNTSEN
JUDICIAL ASSISTANT

February 5, 2018

VIA ECF ONLY                                    NOT FOR PUBLICATION

Jonas V. Anderson                      Keith Y. Boyd
P. Rebecca Kamitsuka

Subject:    In re Champion Excavation, Inc.
            Case No. 17-61839-dwh11

Counsel:

I write to explain my separate Order Denying United States Trustee's Motion to Dismiss or in the Alternative Convert Chapter 11 Case to a Case under Chapter 7 Pursuant to 11 U.S.C. § 1112(b)(4). This letter constitutes my findings of fact and conclusions of law in support of the order.

## I.    Procedural history

Debtor, Champion Excavation, Inc., filed its chapter 11 petition on June 9, 2017. It designated itself a "small business debtor" in the petition.[1]

Champion filed its chapter 11 plan and disclosure statement on October 17, 2017.[2] In accordance with the court's internal procedures, the court prepared and entered an order titled "Order Conditionally Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan; and Notice of Disclosure and Confirmation Hearing."[3] The order was generated internally by the court on a standardized court form bearing the form code "OCADS (6/29/12) dcm." In the form's code, "OCADS" is an acronym for "Order Conditionally Approving Disclosure Statement."

The form is used in small-business cases to conditionally approve the disclosure statement and to set and give notice of the plan-confirmation hearing and the deadline to object to confirmation. The fixed language of the form sets the objection deadline as seven days before the confirmation hearing and requires the plan proponent to serve the order on creditors not later

---

[1] Docket entry 1 at 2.
[2] Docket entries 107 (plan), 108.
[3] Docket entry 110.

than 14 days after the date of the order. The customizations applied by the court included the confirmation hearing date, time, and place.

Under Federal Rule of Bankruptcy Procedure 2002(b)(2), notice of the deadline for filing objections to and for the hearing on confirmation of a chapter 11 plan must be given at least 28 days before both dates. The OCADS form includes and constitutes those notices by specifying the hearing date, time, and location (by customization in each case) and by requiring as a matter of text hard-coded in the form that objections be filed no later than seven days before the hearing. Even if the OCADS is entered on the same day that the plan is filed, the minimum time between service of the form and the hearing is thus 35 days—28 days from mailing of the form to the objection deadline and an additional seven days to the hearing. And because the form permits service of it to be on the 14th day after entry of the form and the hearing must be at least 35 days after service, the minimum number of days between entry of the order and the hearing date is the sum of 14 days and 35 days—49 days. Giving the court one day after the filing of the plan to prepare and enter the OCADS, the minimum number of days between filing of the plan and the confirmation hearing becomes 50 days.

In this case, the OCADS form was entered on October 18, one day after the plan was filed. The plan was filed on October 17 at 4:48 p.m., after the departure of the court staff responsible for preparing the OCADS, so it wouldn't have been possible to enter the OCADS on the date the plan was filed. The hearing date specified in the completed form is December 6—the 49th day after the order was entered on October 18 and the 50th day after the plan was filed. Thus, December 6 is the earliest date that could have been selected consistent with use of the form.

## II.     The motion to dismiss

In the motion, the U.S. trustee requests dismissal of this case or conversion of it to chapter 7 "pursuant to 11 U.S.C. § 1112(b)(4)." Section 1112(b)(4)(A) through (P) is a list of 16 events or circumstances that constitute "cause" for conversion under section 1112(b)(1). In the U.S. trustee's supporting memorandum,[4] as cause for dismissal, the U.S. trustee relies primarily on paragraph (J) of section 1112(b)(1), defining cause to include "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court." The U.S. trustee also relies on the following six other paragraphs of section 1112(b)(4), defining cause to include:

"(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

"(B) gross mismanagement of the estate;

. . .

"(E) failure to comply with an order of the court;

"(F) unexcused failure to satisfy timely filing or reporting requirements established by this title or any rule applicable to a case under this chapter;

---

[4] Docket item 135.

. . .

"(H) failure timely to provide information . . . reasonably requested by the United States trustee; [and]

"(I) failure to timely pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief."

## III.  Cause does not exist for dismissal or conversion under section 1112(b).

Under section 1112(b)(1), except as provided in section 1112(b)(2), a bankruptcy court must dismiss a chapter 11 case or convert it to chapter 7, whichever is in the best interest of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

### A.  *Cause does not exist under paragraph (J).*

Bankruptcy courts are split on whether the court must dismiss a small-business case in which more than 45 days elapse between the filing of a plan and confirmation. The U.S. trustee cited two cases. In *In re Caring Heart Home Health Corp.*,[5] a 2008 Southern District of Florida decision, the bankruptcy court denied retroactive extension of the 45-day period and dismissed the case, even though the court had mistakenly set the confirmation hearing outside the 45-day period. And in *In re Roots Rents, Inc.*,[6] a 2009 Idaho decision, the court denied a motion to redesignate the debtor as a nonsmall-business debtor and dismissed the case.

In three other decisions, bankruptcy courts concluded that dismissal was not mandated by the failure to confirm a plan within 45 days after it was filed. In *In re Crossroads Ford, Inc.*,[7] a 2011 Nebraska decision, the court held that section 1129(e) binds only the court and does not impose a deadline on the debtor, and the court denied a motion to dismiss. (References to sections are to sections of title 11, unless otherwise indicated.) In *In re Maxx Towing, Inc.*,[8] a 2011 Eastern District of Michigan decision, the court overruled the U.S. trustee's belated confirmation objection based on the 45-day deadline. And in *In re Simbaki, Ltd.*,[9] a 2014 Southern District of Texas decision, the court rejected the mandatory-dismissal interpretation as leading to "absurd" results and noting that section 1129(e) imposes a deadline on the court, not the debtor.

I agree with the courts that have held that dismissal is not mandatory under these circumstances. The cases adhering to the mandatory-dismissal rule are generally perfunctory and give little attention to the actual language of section 1129(e).

Under paragraph (J), cause for dismissal or conversion exists in the event of "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by

---

[5] 380 B.R. 908 (Bankr. S.D. Fla. 2008).
[6] 420 B.R. 28 (Bankr. D. Id. 2009).
[7] 453 B.R. 764 (Bankr. D. Neb. 2011).
[8] 2011 WL 3267937 (Bankr. E.D. Mich. July 27, 2011).
[9] 522 B.R. 917 (Bankr. S.D. Tex. 2014).

order of the court." According to the U.S. trustee, the "time fixed by this title" to "confirm a plan" is found in section 1129(e), which provides:

> "In a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3)."

Section 1121(e)(3), in turn, provides that the section 1129(e) deadline can be extended only if (A) the debtor, after providing notice to the U.S. trustee and others, demonstrates that the court is likely to confirm a plan within a reasonable time, (B) the court sets a new deadline at the same time it grants the extension, and (C) "the order extending time is signed before the existing deadline has expired."

### 1.     Section 1129(e)

#### (a)     Section 1129(e) binds the court, not the plan proponent.

The principal clause of section 1129(e) begins with the words "the court shall confirm a plan." It thus imposes no burdens on the debtor or other plan proponent; it does not even contain the words "debtor" or "proponent." The only plausible interpretation of that section is that it imposes an obligation on the court to confirm an otherwise-confirmable plan within 45 days of its filing. I agree with the *Crossroads Ford* and *Simbaki* courts that section 1129(e) binds the court, not the debtor.

#### (b)     The failure to confirm an unconfirmable plan within 45 days after it was filed does not violate section 1129(e).

The section 1129(e) deadline applies only to "a plan that complies with the applicable provisions of this title." Thus, if a plan does not comply with the applicable provisions of the Bankruptcy Code, whether the failure is conceded by the proponent or determined by the court, the 45-day deadline does not apply to the plan.[10]

Three Oregon state agencies (the Department of Revenue, the Employment Department, and the Department of Consumer and Business Services), as creditors, objected to plan confirmation.[11] One of the agencies' objections addresses the interest rate payable on priority tax claims, which the agencies claim to hold. The plan proposes to pay on account of each priority tax claim "the present value of such Claim in regular installments paid over a period not exceeding five (5) years from the order of relief."[12]  The reference to present value implies that some unspecified amount of interest will accrue and be paid on those claims. The agencies correctly note that section 511(a) requires that interest be paid on tax claims at the rate determined under applicable nonbankruptcy law and that under Oregon law the interest rates for debts to the agencies are 9 percent per year for the Departments of Revenue and Consumer and

---

[10] *In re Crossroads Ford, Inc.*, 453 B.R. at 769.
[11] Docket item 129 (state's objection).
[12] Plan at 4 § 3.01.

Business Services and 1.5 percent per month for the Employment Department.[13] Champion so concedes.[14]

A second confirmation objection by the agencies is that Champion had failed to timely file tax returns, as required by section 1116(6)(A).[15] I sustained that objection and ordered that by February 1, 2018, Champion file specified returns.[16] I set a continued confirmation hearing for February 5 to determine whether required returns had been filed.[17]

As the state noted, Champion's failure to comply with sections 511(a) and 1116(6)(A) means that it had not yet complied with applicable provisions of the Bankruptcy Code, which under section 1129(a)(2) prevents confirmation of the plan.

Because the plan as filed could not have been confirmed for at least the foregoing two reasons, the plan is not "a plan that complies with the applicable provisions of" the Code and is thus not a plan described in section 1129(e) subject to the 45-day confirmation deadline.

## 2. Failure to confirm a plan within 45 days is not cause under section 112(b)(4)(J).

Paragraph (J) lists three actions, the failure of which to occur timely is cause: file a disclosure statement, file a plan, or confirm a plan. The paragraph does not identify the actor whose failure to act is described. The first two actions are "to file a disclosure statement" and "to file . . . a plan," and the third is "to confirm a plan." The only actor who can file a disclosure statement or a plan is the plan proponent. The U.S. trustee contends that the failure "to confirm a plan" is committed by the court.

But under a principle of statutory construction and in accordance with common usage of the phrase "to confirm a plan," the better interpretation of it in its context in paragraph (J) is that it refers to the failure "to obtain confirmation" of a plan—i.e., the failure of the *plan proponent* to obtain confirmation. That reading is supported by the principle of *noscitur a sociis*, under which the meaning of doubtful words may be determined by reference to their relationship with other associated words and phrases or, "put simply, the principle that 'a word is known by the company it keeps.'"[18] "The Supreme Court has relied on the *noscitur a sociis* canon to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress.'"[19]

Words and phrases in section 1112(b)(4) that accompany the phrase "confirm a plan" support interpreting that phrase as "to obtain confirmation of a plan," i.e., to be an act of a plan proponent, not the court. The other two events listed in paragraph (J) itself—to file a disclosure

---

[13] State's objection at 3:1-8.
[14] Champion confirmation memo at 5.
[15] State objection at 4:3-9.
[16] Docket item 162.
[17] Docket items 160, 166.
[18] *Yates v. United States*, 135 S.Ct. 1074, 1085 (2015) (applying principle to 18 U.S.C. § 1519). *See also, e.g., Neal v. Clark*, 95 U.S. 704 (1877) (§ 523(a)(4)); *In re Hickman*, 260 F.3d 400, 403 (5th Cir. 2001) (§ 523(a)(7)); *In re Gawker Media LLC*, 571 B.R. 612, 620-21 (Bankr. S.D.N.Y. 2017) (28 U.S.C. § 157(b)(2)(B)); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 799 (Bankr. D. Del. 2007) (§ 503(c)(1)).
[19] *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995), quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961) (26 U.S.C. § 456(a)).

statement and to file a plan—can be taken (or not) only by a plan proponent. The same is the case for each of the remaining paragraphs of section 1112(b)(4). Paragraph (P) expressly identifies the actor as the debtor ("failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition"), and in the remaining paragraphs of section 1112(b)(4), as in paragraph (J), the unstated but implied actor taking (or failing to take) the listed action is the debtor.

Also, interpreting "to confirm a plan" in paragraph (J) to mean "to obtain confirmation of a plan" is consistent with the common usage of the phrase "to confirm a plan" as shorthand used by Congress and courts to refer to a plan proponent's effort to obtain confirmation of a plan. For example, in the Supreme Court's 1988 decision *Norwest Bank Worthington v. Ahlers*, it quoted with approval a congressional committee report accompanying the 1986 bankruptcy legislation enacting chapter 12 for family farmers, which said that the new chapter would make it "easier for a family farmer to confirm a plan of reorganization."[20] And in the Ninth Circuit's 2013 decision in *In re Marshall*, the court referred to the authority of a debtor "to confirm a plan of reorganization."[21] The same usage is found in other decisions.[22]

Thus, "to confirm a plan" in paragraph (J) means "to obtain confirmation of a plan," an act that can only be taken by the plan proponent.

Interpreting the phrase "to confirm a plan" to mean "to obtain confirmation of a plan," in conjunction with the conclusion that section 1129(e) binds the court and not the debtor, eliminates section 1129(e) as a basis for dismissal, but it does not deprive that phrase of meaning. Although no provision of the Bankruptcy Code fixes the time within which the debtor may obtain confirmation of a plan, in an appropriate chapter 11 case, a court may set deadlines for the debtor not only to file a plan but also to satisfy the requirements for confirmation. The debtor's failure to comply with either deadline would constitute cause under paragraph (J).

Additional support for reading paragraph (J) not to refer to the court's failure to meet the section 1129(e) 45-day deadline lies in section 1129(e)'s application only to confirmable plans. If the court's failure to meet the 45-day deadline were a basis for dismissal or conversion, the proponent would be in the absurd position of having to argue *against* the confirmability of its own plan if necessary to buy more time to obtain confirmation. And, because absent the proponent's concession, neither the proponent nor anyone else can know before the confirmation hearing whether a plan not confirmed within 45 days is confirmable, the court would have to conduct a full-scale confirmation hearing, decide that the plan is confirmable, and then dismiss the case for failure to comply with the deadline. In other words, the deadline would result in dismissal only in those cases where dismissal is least warranted.

Another bizarre, if not absurd, consequence of the mandatory-dismissal rule was discussed in *Simbaki*.[23] The debtor has 300 days in which to file a plan. If a small-business

---

[20] Joint Explanatory Statement of the Committee of Conference, reprinted in 132 Cong. Rec. H8998, H8999 (Oct. 2, 1986), *quoted in Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 211 n.11 (1988).

[21] 721 F.3d 1032, 1069 (9th Cir. 2013).

[22] *In re Friedman*, 466 B.R. 471, 483 (9th Cir. B.A.P. 2012) (Jury, Bankr. J., dissenting, referring to ability of "debtors, to confirm a plan"), *overruled on other grounds by Zachary v. California Bank & Trust*, 811 F3d 1191 (9th Cir. 2016); *In re Babayoff*, 445 B.R. 64, 72 (Bankr. E.D.N.Y. 2011) (referring to circumstance that "made it unlikely that the Debtor would be able to confirm a plan.").

[23] *Simbaki*, 522 B.R. at 923-24.

debtor files its plan immediately on the petition date, the mandatory-dismissal rule would impose a 45-day drop-dead date. But if the same debtor needlessly waits 299 days before filing its plan, it suffers no penalty for the delay.

Thus, debtors who fritter away the months before filing their plans would be rewarded with extra time for negotiating, while debtors who diligently file their plans at the outset of the case are punished with harsh and inflexible dismissal rules.

All of the absurdities discussed above are best removed by interpreting section 1129(e) as an injunction directed at the court: "If a small-business plan is suitable for confirmation, do not delay in confirming it."

> **3.    No court order in this case sets a deadline for confirmation, and cause does not exist under paragraph (J).**

Cause exists under paragraph (J) only if one of the listed events (file a disclosure statement or file or obtain confirmation of a plan) does not occur "within the time fixed by this title or by order of the court."

No provision of the Code fixes a deadline for a plan proponent to obtain confirmation of a plan, and in this case neither does any court order. Thus, cause does not exist under paragraph (J) to dismiss or convert.

Interpreting the 45-day deadline in section 1129(e) to apply to the court, making the failure to meet that deadline not the failure of the plan proponent to obtain confirmation of a plan by a deadline applicable to the proponent, neither conflicts with nor renders meaningless anything in section 1121(e)(3).

The 45-day period binds the court, and section 1121(e)(3) provides the means by which the debtor can extend that deadline. As proponent, the debtor could seek to extend that period for several reasons. For example, the debtor could find itself in the process of negotiating a plan and need more time to complete negotiations, or the debtor could desire or need to seek to avoid the expensive and unnecessary litigation that would result from proceeding to confirmation before negotiations are complete. In both circumstances, an extension of the 45-day deadline would relieve the debtor of having to have to sabotage its own plan by arguing against its confirmability, and it would avoid the expensive litigation that would result from proceeding to a contested confirmation before negotiations are complete. For such a debtor, the section 1121(e)(3) extension process makes perfect sense.

In short, section 1121(e)(3) retains meaning even though the court's failure to meet the section 1129(e) deadline does not constitute cause for dismissal.

In this case, Champion's plan is not confirmable as filed, so it is not one described by section 1129(e). Even if the plan were confirmable, that section applies only to the court, and no statutory or court-ordered confirmation deadline applies to Champion's plan. Thus, the court's failure to confirm the plan within 45 days after it was filed does not require the court to find cause mandating dismissal or conversion.

**B.** *Cause does not exist under other paragraphs of section 1112(b)(4).*

In addition to paragraph (J), the U.S. trustee also contends that cause for conversion or dismissal exists under several other paragraphs of section 1112(b)(4): (A), (B), (E), (F), (H), and (I). In each case, the evidence does not support a finding of cause.

### 1. Cause does not exist under paragraph (A).

Paragraph (A) includes as cause "[s]ubstantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."

To support its contention that Champion has suffered substantial or continuing loss to or diminution of the estate, the U.S. trustee relies on (1) variances between Champion's actual income, expenses, and profit shown in its month operating reports, on one hand, and its projections, on the other hand; (2) math errors and internal inconsistencies in Champion's monthly financial reports; and (3) disbursements by Champion to pay some of the personal expenses of Dwayne Deesing, Champion's president and sole shareholder.

Thomas Cochrane, Champion's financial consultant, credibly testified regarding Champion's financial condition, accounting system, and monthly operating reports (MORs) filed in this case.

Champion uses Quickbooks software to maintain its financial books of account. According to Cochrane, before the petition date, the Quickbooks system had not been maintained with all proper entries and reconciliations. Since the petition date, Champion has made some improvements to the billing and vendor-payment components of the Quickbooks system, but further improvement is required. Cochrane has spent most of his time with Quickbooks focusing on improving its billing and accounts-receivable components. Champion needs to improve the vendor component and Champion's process for reconciliation of checking account bank statements to the Quickbooks checking account register.

According to Cochrane, the MORs are accurate, and Quickbooks substantiates Champion's expenses in the MORs. The MORs have been prepared based on checking-account records, contracts, bids, and selected information from the Quickbooks system. Cochrane addressed several questions raised by the U.S. trustee regarding the MORs. The $7,925.83 amount identified in paragraph 12 of Kevin Files's declaration reflects the absence of reconciliation of the Quickbooks checking-account register against the checking-account statements. The $26,294 amount appearing in the October 2017 MOR as "cash received plus joint checks disbursed by Contractor" is correct. A joint check is made payable by a payer, such as a project general contractor, jointly to Champion and a third party, such as a material supplier with lien rights. Champion endorses the joint check and sends it to the third party. Although the joint check cannot pass through Champion's account, Champion correctly accounts for it as a reduction in both the account receivable due from the payer and the account payable due to the third party. The $3,000 discrepancy in the original October 2017 MOR resulted from Champion initially treating Chad Emmert's refund of that amount as income; in the amended October MOR, Champion treated it as a reversed expense.

Cochrane learned of Deesing's two cash withdrawals totaling $4,400 from a Champion credit card and instructed Deesing to stop taking cash withdrawals so all expenses will flow through the bank account and appear in the MORs.

When Cochrane first met Deesing, Champion was in serious trouble and had no operating cash. Since then, Champion has taken steps to rebuild its business. Champion has no direct employees; it uses a professional-services firm to provide employees, and Champion pays the services firm. Champion has been getting quotes out to fill the order pipeline. Deesing has by and large implemented Cochrane's recommendations. According to Cochrane, Champion had about $90,000 in cash and current accounts receivable of about $290,000, and the business was "on its way back."

Cochrane addressed the discrepancy between actual and projected financial figures. With a small business such as Champion's with few projects, variance between actual and projected figures is expected. The projections included jobs not received and jobs that were received but delayed. Champion is focusing on doing the work and building cash and accounts receivable. "Things are going according to plan."

Although Deesing's draws in September and October 2017 were each $7,400, Cochrane testified that Deesing's average draw since the petition date has been $5,000. Champion (through Deesing) has made several disbursements that appear to have been on account of Deesing's personal expenses. The disbursements include $1,600 paid to OlsenDaines, a law firm, for advice to Deesing, rather than to Champion. The amounts of the other disbursements for his personal expenses have not been material.

There is no evidence that Deesing's direct draws and other payments made by Champion on his behalf exceeded the permitted $5,500 monthly draws ($5,000 expressly permitted by the order plus 10 percent permitted as a per-line-item variance). Even if there were evidence that Deesing caused Champion to make direct and indirect payments to Deesing exceeding the amount authorized by the cash-collateral order, based on my evaluation of his demeanor as a witness, I find that he did so due to his lack of legal sophistication without realizing that doing so violated a court order.

The challenged disbursements include $3,000 to Emmert, which was for tax-preparation services to Champion; that amount was returned by Emmert to Champion after Emmert decided not to proceed with the engagement. Champion should have sought court approval before making the $3,000 payment to Emmert, but in any case, that disbursement was not for Deesing's benefit.

To resolve the motion to dismiss, I need not find that Champion has satisfactorily answered every question raised by the U.S. trustee about the accounting system. I find that the evidence does not support the conclusion that there is a substantial or continuing loss to or diminution of the estate or that there is no reasonable likelihood of rehabilitation.

### 2. Cause does not exist under paragraph (B).

Under paragraph (B), cause includes "gross mismanagement of the estate."

The U.S. trustee does not address paragraph (B) separately from the other paragraphs of section 1112(b)(4). Instead, it mentions paragraph (B) in connection with its discussion of paragraph (A), suggesting that the facts demonstrating the absence of a reasonable likelihood of rehabilitation also demonstrate gross mismanagement of the estate.

For the reasons that I do not find the absence of a reasonable likelihood of rehabilitation, I also do not find gross mismanagement of the estate.

### 3.        Cause does not exist under paragraph (E).

Under paragraph (E), cause includes failure to comply with an order of the court.

The U.S. trustee does not address paragraph (E) separately from the other paragraphs of section 1112(b)(4). Instead, it mentions paragraph (E) in connection with its discussion of paragraph (A), suggesting that the facts demonstrating commingling of Champion's and Deesing's funds violated the cash-collateral order.

As discussed in part III.B.1 above, Champion has made disbursements on account of Deesing's personal expenses, but there is no evidence that the sum of Deesing's draws and the other disbursements to pay his personal expenses exceed the amounts permitted by the cash-collateral order. Champion thus did not violate the cash-collateral order by making the disbursements on account of Deesing's personal expenses. Nonetheless, I have cautioned Champion's counsel that Champion should make no further disbursements to or for the benefit of Deesing other than direct draws to Deesing in amounts permitted by the order.

### 4.        Cause does not exist under paragraph (F).

Under paragraph (F), cause includes "unexcused failure to satisfy timely filing or reporting requirements established by this title or any rule applicable to a case under this chapter."

In its memorandum, the U.S. trustee refers to paragraph (F) only in an introductory list of paragraphs of section 1112(b)(4) that the U.S. trustee said were grounds for cause that it would "describe in more detail below."[24] After that reference to paragraph (F), the U.S. trustee included the parenthetical "(delinquent tax return filings)." The U.S. trustee does not elsewhere in the memorandum address paragraph (F). As explained in part III.B.6 below, Champion's failure to file all prepetition tax returns, at least as of the date of the filing of the motion to dismiss, is not cause to convert or dismiss.

At the January 3 hearing, the U.S. trustee argued that cause exists due to Champion's failure to attach to its filed MORs copies of its bank statements. In response, Champion's lawyer stated, and the U.S. trustee's lawyer conceded, that Champion had provided copies of the bank statements to the U.S. trustee. Champion's lawyer also stated that it is the custom, at least for lawyers dealing with the U.S. trustee's office in the Eugene division of this court, who are handling this case, that bank statements are provided to the U.S. trustee but not filed with the

---

[24] U.S. trustee memorandum at 3.

court. In response, the U.S. trustee's lawyer reiterated that the MOR form requires that bank statements be attached.

By acquiescence of the parties, evidence on the motion to dismiss was heard in conjunction with the confirmation hearings on December 6 and 20. The January 3 hearing was held only to hear from any parties other than Champion who wished to oppose the motion; there were none. On January 3, I heard additional closing argument on the motion, but I did not reopen the record. Under paragraph (F), the legal question I must address is not whether Champion failed to comply with a reporting requirement, but rather whether the failure was unexcused. Because the U.S. trustee did not raise the issue of the bank statements not being attached to the MORs during the two evidentiary hearings on the motion, Champion did not have an opportunity to prepare for and present evidence on that issue, such as evidence consistent with Champion's lawyer's statement that, in practice, bank statements are provided to the U.S. trustee but not filed with the MORs. For that reason, I decline to address that argument as an additional ground under paragraph (F).

### 5.      Cause does not exist under paragraph (H).

Under paragraph (H), cause includes "failure timely to provide information . . . reasonably requested by the United States trustee."

According to the U.S. trustee's memorandum, the only information that Champion has failed timely to provide to the U.S. trustee is "all federal and state tax returns filed for 2011 through 2016."[25] The U.S. trustee offered no evidence that Champion failed to provide to the U.S. trustee copies of any returns that Champion had, in fact, filed. Thus, cause does not exist under paragraph (H).

### 6.      Cause does not exist under paragraph (I).

Under paragraph (I), "failure to timely pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief" is cause. The motion refers to section 1116(6)(A), which requires a DIP to "timely file tax returns and other required government filings." According to the motion to dismiss, "the DIP has not filed tax returns for 2011 through 2016" and "has not timely filed his [its] federal and state tax returns after the date of the order for relief." The U.S. trustee has not disputed Champion's statement in its disclosure statement that it is a Subchapter S corporation[26] and thus not a taxpayer.

The status of Champion's tax returns and payments is also a basis for the state agencies' confirmation objection. At the hearing on January 3 I agreed with the agencies that, under section 1129(a)(2), I cannot confirm the plan until Champion complies with section 1116(6)(A).

On January 8, I ordered that, no later than February 1, Champion file its 2011 through 2016 state and federal tax returns, any unpaid payroll employment tax due to any agency, and any unfiled returns due to TriMet (the Tri-County Metropolitan Transit District of Oregon). On February 5 at 1:30 p.m., a continued confirmation hearing will address, among other things,

---

[25] U.S. trustee memorandum at 11.
[26] Disclosure Statement [docket item 108] at 7.

whether Champion has complied with that order. I set that deadline, giving Champion an opportunity to cure its failure to comply, for several reasons.

First, because paragraph (I) refers only to taxes owed after the petition date or returns due after the petition date, it does not apply to returns due before the petition date or tax payments due before the petition date. That reading is supported by the language of section 1116(6)(A), which directs the obligation to timely file tax returns to a small-business "debtor in possession" or trustee, but not the debtor. Thus, section 1116(6)(A) applies only to returns that, as of the petition date, could yet have been timely filed. Champion filed its petition on June 9, 2017, and the most recent of the years for which the U.S. trustee and the state agencies assert that returns have not been filed is 2016. There is no record evidence that the due date for Champion's 2016 returns, much less any of the others, was after the petition date. Thus, Champion has not violated section 1116(6)(A), and cause does not exist under paragraph (I).

Second, although section 1106(a)(6), through section 1107 (neither of which was cited or discussed in the memorandum supporting the motion to dismiss), obligates Champion as DIP to file its unfiled prepetition returns, it does not specify a deadline for those returns (which by definition are past-due as of the petition date).

Third, Congress has demonstrated that it knows how to impose specific deadlines for filing tax returns, but it has chosen to do so only for debtors in chapter 13. Section 1308(a) requires a chapter 13 debtor to file with tax authorities all required returns for prepetition tax periods ending during the four-year period ending on the petition date, and that obligation must be fulfilled "[n]ot later than the day before the date on which the meeting of the creditors is first scheduled to be held under section 341(a)." The remaining portions of section 1308 prescribe specific procedures by which the debtor can seek to extend the return-filing deadline. If the trustee does not hold open the meeting of creditors, the deadline is not extended.[27] Even if the trustee holds open the meeting of creditors to allow the debtor additional time to file returns, the additional period for filing returns due before the petition date cannot extend beyond 120 days after the meeting.[28] The court can extend the 120-day deadline for up to 30 days in prescribed circumstances, but only if the court's extension order is entered during the 120-day period.[29] None of those provisions applies to a chapter 11 case such as Champion's, nor do any other analogous Bankruptcy Code provisions.

Fourth, with exceptions of TriMet and federal and state payroll withholding taxes, Champion, as a subchapter S corporation, is not a taxpayer. Thus, the primary purpose of the requirement that a DIP file unfiled prepetition returns—to enable taxing agencies to timely file proofs of claim and otherwise assert protect their interests in a bankruptcy case—is largely absent in this case.

Fifth, Champion has taken steps since the filing of its petition to arrange for preparation of the unfiled returns. Deesing has contacted three CPAs. The first requested a $5,000 retainer, so Deesing looked for a CPA who would require a lesser retainer. The second CPA, Emmert, agreed to accept a $3,000 retainer, but later backed out. Champion obtained court approval of its employment of the third CPA contacted by Deesing, David Reckdahl, CPA, to prepare the

---

[27] Section 1308(b)(1).
[28] Section 1308(b)(1)(A).
[29] Section 1308(b)(2).

returns.[30] At the January 3 hearing, Champion's lawyer reported that Reckdahl had said that the returns could be prepared and filed by February 1.

With the benefit of hindsight, perhaps Champion could have acted more promptly to cure its tax-filing deficiency. Based on the Deesing's testimony, I find that the delay in addressing the tax issue is substantially due to what I perceived to be his lack of sophistication in matters other than the actual operation of Champion's excavation business. I do not find that he has intentionally delayed complying with tax-filing requirements. And for the reasons described above, nothing in the Bankruptcy Code prohibits me from exercising my discretion to give Champion the additional period of time through February 1 to prepare and file the unfiled returns. Based on that extension, paragraph (I) does not require that I now find the existence of cause based Champion's prior failure to have filed its prepetition returns.

## IV.    Appointment of a trustee or examiner would be preferable to dismissal or conversion.

Even if I were to find the existence of cause to dismiss or convert, I find that the evidence described above demonstrates that appointment of a trustee or examiner would be in the best interest of creditors and the estate and preferable to dismissal or conversion. I also base that finding on the evidence in support of confirmation of Champion's pending plan, including the votes of most creditors to accept the plan.

## V.    Conclusion

The U.S. trustee's motion to dismiss has alerted this court to the need to address its procedures in order to ensure that the confirmation hearing in a small-business chapter 11 case occurs within the 45-day period in which the court is required to confirm a confirmable plan.

Nonetheless, especially under the circumstances of this case, Champion's failure to obtain confirmation of its plan within 45 days after filing the plan does not require that I find the existence of cause to convert or dismiss this case. Neither does there exist cause requiring me to dismiss or convert this case now under any of the other provisions of section 1112(b)(4) on which the U.S. trustee relies.

Denial of the motion to dismiss at this time is without prejudice to the U.S. trustee's renewal of the motion based on evidence adduced or facts occurring after December 4, 2017, the date on which the motion was filed.

Sincerely,

*David W. Hercher*

DAVID W. HERCHER
Bankruptcy Judge

---

[30] Docket item 124.